LAVIGNE *v.* COYNE.

1. Partnerships—Cancellation of Contract—Fraud—Evidence.
    In an equitable action to set aside a written contract of partnership between complainant and defendant, who were mature business men, and had been business associates for many years, where complainant's evidence of fraud and overreaching is met by defendant's evidence, complainant has failed to establish his case by a clear preponderance of positive and convincing evidence which would justify the court in setting aside the contract.

2. Same—Fraud—Evidence.
    Evidence that complainant was 51 years of age; of varied experience in business enterprises; was an inventor and master mechanic before he reached his majority; was in the manufacturing business for himself for over eight years; had invented and patented over 200 mechanical devices; was at one time president of a motor car company, and at the time of the trial was president of a manufacturing company; was familiar with business methods and with contracts relating to patents as well as legal steps to be taken in obtaining same; objected to the form of the contract and had it changed, saying it was no good because they could not sue any one that infringed; had entered into numerous contracts regarding payment of royalties, and had before been engaged in litigation arising out of contracts concerning his various inventions, was competent to consider in connection with his claim that he was overreached and deceived into signing the contract.

3. Same—Contracts—Evidence—Termination of Contract.
    Complainant's contention that the formation of a manufacturing company was to terminate their contract is inconsistent with the facts, where the evidence shows that although the company was formed four months after signing the agreement, they continued their joint efforts and operations for over five years, defendant furnishing over $2,000 to perfect and patent new inventions, which complainant received and has never offered to refund.

4. SAME — CANCELLATION OF INSTRUMENTS — FRAUD — BURDEN OF PROOF.

Where complainant repudiates and asks the court to wipe out an instrument in writing, not on its face harsh, unfair, or in any particular questionable, which he signed after examination and change in form as he insisted, on the ground that he was inveigled into signing it by fraud and falsehood, the burden of proof is upon him, and where the evidence is not clear, convincing, and free from doubt, the decree of the court below dismissing the bill will be affirmed.

Appeal from Wayne; Mandell, J. Submitted June 18, 1915. (Docket No. 62.) Decided September 29, 1915.

Bill by Joseph P. Lavigne against John Coyne to cancel a written agreement of partnership alleged to have been obtained by fraud, misrepresentation and deceit, and for other relief. From a decree for defendant, complainant appeals. Affirmed.

*John E. Moloney,* for complainant.

*George F. & Peter J. Monaghan,* for defendant.

STEERE, J. This bill was filed to restrain two actions at law brought by defendant against complainant and to set aside a contract of partnership between them dated January 25, 1911, out of which said actions arose. The suit was heard in the Wayne county circuit court in chancery on pleadings and proofs taken in open court, resulting in a decree dismissing complainant's bill, from which he has taken an appeal to this court.

The parties to this suit became acquainted in 1902, while both were in the employ of the Detroit Lubricator Company, of Detroit, Mich., complainant being master mechanic and assistant superintendent of its factory, and defendant employed in a responsible posi-

tion connected with its business management. Complainant is a skilled machinist and mechanic of more than ordinary ability and an inventive turn of mind, having for many years devoted much time and attention to devising new mechanical appliances of various kinds, for many of which he secured patents. Through their association in the same employ defendant became interested in complainant's efforts in that line, and from 1902 to 1905, under an oral agreement for mutual profits, assumed and paid most of the expense of complainant's endeavors in the matter of new inventions.

On September 23, 1905, they entered into a written agreement, following up their former efforts and expenditures, looking to the utilization of complainant's inventions and a division of resulting profits. The immediate occasion for this written agreement was a project to organize a corporation to take over the business which they anticipated they could successfully develop with their experience in connection with new appliances invented and patented by complainant, and which in its name and products would tend to be a rival of the Detroit Lubricator Company, with the operations and business of which both were familiar. This first written contract, preceding the one directly in issue here, stated in outline, contemplated the invention of appliances and securing patents therefor by complainant, the expense of which defendant was to bear, the patents when finally obtained to be in the name of complainant, but defendant to share equally whatever was realized for them from the corporation which they would later organize, and by which they would be employed, their salaries received from such corporation to be divided equally between them. They were then and for some time thereafter on friendly terms, closely associated in their joint enterprises, and apparently had confidence in each other. Several de-

vices had already been invented by complainant and patents obtained therefor; the expense being defrayed by defendant under the preceding oral agreement.

Their proposed corporation, planned to take over and use complainant's inventions, was organized February 26, 1906, as the Lavigne Manufacturing Company, and considerable profit was realized by them from its promotion, though it is shown to have experienced a somewhat checkered, and not altogether profitable, career as a manufacturing enterprise. So far as disclosed, the profits were chiefly in the promotion. Both parties were stockholders and officers of the organization up to May, 1911. When this corporation was organized and first started in business complainant received from it a salary of $1,800 in money and $1,200 in stock, which was later changed on different occasions. Defendant remained with the Detroit Lubricator Company, receiving an annual salary of $3,-000. In November, 1908, he also entered the Lavigne Manufacturing Company's employ at $2,000 per year, later raised to $3,000, and finally $3,600. From time to time they adjusted their salaries according to their pooling arrangement provided for in their contract, although it appears that on July 20, 1909, defendant was in arrears to complainant to the extent of about $400, which he claims was then balanced and paid in a loan of $1,000 made by him to complainant on that date.

Details of the many transactions between these parties and their relations with the company which they organized, as disclosed by the record, covering a period of about nine years, are too long to review here at length, but from this record as a whole we fully agree with the finding of the trial court that during all these years, regardless of what was in writing between them, these parties recognized, acted upon, and maintained their original partnership contract rela-

188 Mich.—25.

tions under the arrangement for co-operation and division of profits in patents, complainant continuing from time to time, according to his inspirations and opportunity, to invent new mechanical devices and get, or try to get, patents for them, while defendant continued to put up the money and defray the expenses incurred by complainant in such endeavors.

In the fall of 1910 it became acutely manifest that the Lavigne Manufacturing Company was in an unsatisfactory and unsound financial condition, for which various and conflicting reasons are assigned, and over which differences arose resulting in the relations of these parties becoming less friendly and strained to a point where each blamed the other for the unsuccessful condition of the corporation.

Complainant claims that, shortly after it was executed, he lost his copy of their first written agreement of September 23, 1905, the contents of which he did not fully remember, and charges that defendant, learning of this, later pretended he had also lost his copy, and thereafter falsely claimed that by its terms his former partnership rights in complainant's inventions continued, by which complainant was deceived and induced to both continue to accept money from defendant in aid of his patent projects, and later to sign the contract of January 25, 1911, at the solicitation of defendant, who then, falsely and with intent to defraud, represented that it was in substance the same as their first written agreement and to take the place of it, when in fact by the terms of the first all rights of defendant in any of complainant's inventions terminated upon formation of the Lavigne Manufacturing Company.

Defendant in his pleading and proof denies knowledge that complainant had lost his copy of the contract or representing to him a like experience, contends that the first written agreement related to and was intended

to cover only their proposed corporation, that the continuance of their partnership efforts and expenditures to develop some patent of value was thoroughly understood, agreed to, and acted upon without question by both for years thereafter, complainant inventing and patenting, while defendant defrayed the expenses, during which time a packless valve was patented; that no misrepresentation whatever was made by defendant as to the first or second contract, but the latter was signed understandingly by both parties after full discussion and alterations to meet complainant's views, as the culmination of their former agreements and dealings, oral and written, in their joint operations to patent complainant's inventions.

The packless valve patent appears to have had sufficient merit to afford some profits in royalties, which complainant at first divided with defendant, paying him in all $550, the last payment being made about October 31, 1910, but after friction arose over the management of the Lavigne Manufacturing Company, he made no further payments, and defendant, who had then left the company, brought two actions for his share of the royalties, which were followed by this suit. Defendant states he left the company May 6 or 7, 1911. Complainant states it was about two weeks after the second contract was signed, and says:

"At the time of execution of the contract   *   *   * I did not know of any friction outside of the little friction we had. It became a question of my getting out or Coyne and Nagel getting out. Mr. Dwight came to my rescue and bought enough stock to control the corporation and keep me in."

This suit is brought by complainant to set aside a written contract between himself and a former associate with whom he had "a little friction" at the time he signed it, and who, he says, was trying to get him out of the company he had helped organize. He was

a business man of mature years, and signed after abundant time to examine it and after it had been corrected at his dictation. Before a court is justified in setting aside a written agreement of this nature deliberately executed between two business men, there must be a very clear proponderance of positive and convincing evidence sustaining the charges in complainant's bill that he was induced to sign it by fraud and overreaching deceit. The primary proof of this rests in complainant's testimony alone, which is met by equally positive testimony of defendant to the contrary. They are equally interested witnesses.

It is difficult to conceive that complainant is a man easily overreached under the circumstances disclosed here. He was 51 years of age at the time of this trial, of varied experience in business enterprises, states that he was an inventor and master mechanic before reaching his majority, was in the manufacturing business for himself in New Haven, Conn., for over 8 years, has invented and patented during his life over 200 mechanical devices, was at one time president of a motor car company, and at the time of this trial was president of the Lavigne Manufacturing Company. He was familiar with the business methods and organization of corporations and with contracts relating to patents, as well as legal steps customarily taken in obtaining the same. In the office of the attorney who drew this contract, who had formerly acted for him professionally in securing some of his patents, he objected to the form of the contract, and said it was "no good," because if each owned half they "could not sue any one that infringed," and the contract was changed at his dictation so that he retained title to the patents. He had previously entered into numerous contracts regarding payment of royalties, and had at different times before been involved in litigation arising out of contracts with persons and companies concerning

his various inventions. These facts are competent evidence to consider in connection with his claim that he was overreached and deceived into signing this contract which he now repudiates.

Four months after the first contract was signed the corporation which it contemplated, and which complainant claimed terminated their partnership as to patents, was organized; yet it is conclusively shown that their joint efforts and operations as to new inventions and patents continued as before; defendant pooling his salary with complainant and furnishing him money to perfect and patent new inventions. Just how much money defendant furnished to directly pay for patents is not clearly shown, but upon that subject, including pooling of salaries, it is shown complainant received from defendant in that connection from September, 1905, to January, 1911, over $2,000. There is no showing of any offer to refund before suit was begun.

We are impressed, from a careful consideration of complainant's testimony, as was the trial court, that it contains various contradictions and inconsistencies which seriously weaken its convincing force. Insisting in his direct examination that he early lost his copy of the first contract, told defendant of it, and in receiving money from defendant to finance his patents insisted it was on condition that the contract continued their partnership, he on cross-examination stated that he received the money without protest, and of the lost copy testified:

"I didn't know of that contract existing after it was made. I don't know where I put it after it was made. * * * Nothing came up that I know of that would make me look for it until just a little while before the eruption took place."

Though contending the whole agreement between them as to patents terminated upon the incorporation of the Lavigne Company, he testifies:

"When the old contract was made, it was to cover anything that we might make. I had been considering the packless valve for some 15 years."

It was patented in 1909, and defendant financed him in developing and patenting it long after the corporation was formed. He made no protest nor attack upon the validity of defendant's interest in it until, out of the numerous patents they obtained, this finally proved of some value and afforded some profit, and he was pressed by litigation to account to defendant for a share of the royalties he had collected.

We are unable to discover that there are overwhelming equities in this case appealing strongly in favor of either litigant. Complainant repudiates, and asks the court to wipe out an instrument in writing, not on its face harsh, unfair, or in any particular questionable, which he signed after examination and change in form as he insisted, on the ground that he, in fact, was inveigled into signing it by fraud and falsehood. The burden of proof on that issue rested upon him. His testimony to sustain the issue is met by defendant's testimony to the contrary. In such a case the courts require, and to set aside the written instrument must find, that the evidence of complainant rings true and of a character so clear, convincing, and free from doubt as to preponderate and carry conviction against defendant's evidence to the contrary, or the issue must be resolved against his affirmative contention.

A careful consideration of this record in that light has resulted in our reaching the same conclusion as that to which the learned trial judge who heard the case was led by listening to the testimony with the witnesses before him.

The decree is affirmed, with costs to defendant.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY, who sat in the case, took no part in this decision.